| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL XI | | |
| JOSÉ SANTIAGO AVILÉS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300603 | *REVISIÓN ADMINISTRATIVA*<br>Procedente del Departamento de Corrección y Rehabilitación<br><br>Solicitud Núm.:<br>ICG-1412-2023 |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2024.

Comparece ante nos, por derecho propio e *in forma pauperis*, el señor José Santiago Avilés ("Sr. Santiago Avilés" o "Recurrente"), mediante recurso de revisión administrativa, recibido el 21 de noviembre de 2023. Nos solicita que revisemos *una Respuesta de Reconsideración al Miembro de la Población Correccional* emitida el 9 de noviembre de 2023, notificada el 15 del mismo mes y año, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación ("DCR" o "agencia recurrida"). Por virtud de la misma, el DCR denegó la solicitud de reconsideración instada por el Recurrente.

Por los fundamentos expuestos a continuación, **desestimamos** el recurso de epígrafe, por falta de jurisdicción.

### I.

El 18 de septiembre de 2023, el Recurrente presentó ante el DCR una *Solicitud de Remedio Administrativo* (ICG1412-2023), a los fines de solicitar un traslado a la Institución Correccional 216 de

Sabana Hoyos en Arecibo.[1] Señaló que era una persona de edad avanzada y deseaba "disfrutar de un ambiente m[á]s tranquilo[,] obtener empleo[,] mejor ayuda económica[,] etc.".

Evaluada tal solicitud, el 25 de octubre de 2023, el DRC emitió *Respuesta al Miembro de la Población Correccional*,[2] la cual fue recibida por el Recurrente en la misma fecha. Mediante esta, el DCR resolvió que el traslado se trabajaría "próximamente". Además, le orientó sobre el proceso y que se le solicitaría traslado para cualquier institución carcelaria que albergue su población y custodia.

En desacuerdo, al próximo día, el Recurrente instó *Solicitud de Reconsideración,*[3] la cual fue recibida por la agencia recurrida el 2 de noviembre de 2023. Dicha solicitud fue denegada mediante la *Respuesta de Reconsideración al Miembro de la Población Correccional*,[4] emitida el 9 de noviembre de 2023, notificada el 15 del mismo mes y año, en la que el DCR determinó lo siguiente:

> Con relación a su solicitud de reconsideración, se evaluó su caso, con la supervisora del área de socio penal de la Institución Guerrero, Aguadilla, en la cual informó que para la fecha del 5/octubre/23 usted se le asignó custodia protectiva, donde usted estuvo de acuerdo, aceptando la custodia protectiva, donde se le orientó al respecto, como también usted no le interesó el traslado, indicando que usted quería quedarse en dicha Institución. Ademas, usted se negó en dos ocasiones a los trabajos de áreas verdes, esto fue para la fecha de 18/octubre/23.
>
> Se le orienta Sr. Santiago, que la custodia protectiva, es establecer y operar un programa [d]e custodia especializada para los confinados que necesiten ser protegidos de otros confinados. Cabe señalar que si el confinado, **en el caso de usted**, como voluntariamente aceptó custodia protectiva, se solicita por escrito y señala que continua la necesidad de la custodia, es visto en Comité de Clasificación y Tratamiento **realizará la revisión del caso**, asignarán permanentemente la solicitud y se solicita traslado, es un protocolo que se realiza en el área socio penal. (Énfasis suplido).

---

[1] Apéndice de la parte Recurrida, págs. 2-4.
[2] *Íd,* págs. 5-6.
[3] *Íd,* págs. 7-8.
[4] *Íd,* págs. 9-10.

Inconforme aun, el 15 de noviembre de 2023, recibida el 21 del mismo mes y año, el Recurrente acudió ante esta Curia mediante recurso de revisión judicial.

El 8 de febrero de 2023, esta Curia emitió *Resolución* en la que, entre otros asuntos, le concedió un término de treinta (30) días para que el DCR expusiera su oposición al recurso. En cumplimiento con lo ordenado, el 10 de enero de 2024, el DCR, por conducto de la Oficina del Procurador General de Puerto Rico, presentó un escrito intitulado *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.
### A. *Jurisdicción*

En nuestro sistema de derecho, la jurisdicción consiste en el poder y autoridad que tienen los tribunales para adjudicar casos o controversias, siempre que estos sean justiciables. *JMG Investment, Inc. v. ELA*, 203 DPR 708 (2019); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018). Es responsabilidad de los propios tribunales cerciorarse sobre su jurisdicción, así como la jurisdicción del foro donde procede el recurso, pues ella no puede adjudicarse ni ser subsanada, aun con la anuencia de las partes del pleito. *JMG Investment, Inc. v. ELA*, 203 DPR 708 (2019)*; Fuentes Bonilla v. ELA*, 200 DPR 364 (2018).

El Tribunal Supremo de Puerto Rico ha reiterado que el incumplimiento con las reglas de los tribunales apelativos impide la revisión judicial. *Soto Pino v. Uno Radio Group*, 189 DPR 84 (2013). Siendo ello así, las disposiciones que rigen el perfeccionamiento de los recursos a nivel apelativo deberán cumplirse rigurosamente. De esta forma, el derecho a la revisión de

una determinación administrativa por el Tribunal Apelativo queda sujeto al estricto cumplimiento del reglamento, las limitaciones legales y su perfeccionamiento.

A tono con lo anterior, la Regla 83(c) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, permite al propio tribunal desestimar un recurso por carecer de jurisdicción.

### B. Términos de la Revisión Judicial

La *Ley de Procedimiento Administrativo del Gobierno de Puerto Rico*, Ley Núm. 37 del 30 de junio de 2017, 3 LPRA sec. 9601 *et seq.*, ("LPAU"), contiene un cuerpo de normas para gobernar las determinaciones de una agencia en procesos adjudicativos al emitir una orden o resolución que define derechos y deberes legales de personas específicas. *Rivera v. Dir. Adm. Trib.* 144 DPR 808 (1998). Además, establece un procedimiento uniforme de revisión judicial de las decisiones tomadas por las agencias administrativas. En específico, dicha ley aplica a todos los procedimientos en que una agencia deba adjudicar formalmente una controversia. La LPAU fue promulgada con el fin de brindar a la ciudadanía servicios públicos de eficiencia, esmero, prontitud y de alta calidad bajo el resguardo de las garantías básicas del debido proceso de ley. *Magriz v. Empresas Nativas*, 143 DPR 63 (1997).

En específico, la Sección 4.2 de la LPAU, establece el término que la parte afectada por una determinación final de la agencia debe cumplir para solicitar la revisión judicial. Particularmente, la referida disposición estatutaria dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, **dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia** o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, **cuando el término para solicitar la revisión judicial haya**

**sido interrumpido mediante la presentación <u>oportuna</u> de una moción de reconsideración.** La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Disponiéndose, que si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. 3 LPRA sec. 9672.

Como vimos, este plazo para presentar la revisión judicial comienza a transcurrir a partir de la fecha del archivo en autos de la notificación de la decisión administrativa o a partir de la fecha aplicable cuando el término es interrumpido mediante la oportuna presentación de una moción de reconsideración. *Pérez Vélez v. VPH Motor Corp.*, 152 DPR 475, 483 (2000); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 115-116 (1998).

**III.**

Antes de entrar en los méritos de los reclamos presentados por la parte aquí Peticionaria, este Foro tiene el deber ineludible de auscultar si ostenta jurisdicción sobre el caso ante su consideración. *SLG Solá-Moreno et al v. Bengoa Becerra, supra.* Efectuado tal ejercicio, notamos que esta Curia carece de jurisdicción para atender el presente caso, por tal razón, nos tenemos otra alternativa que desestimarlo.

En el caso de autos, la parte Recurrida solicitó al DCR un traslado para la institución correccional 216 de Sabana Hoyos. En respuesta a dicha solicitud, el 25 de octubre de 2023, el DRC emitió *Respuesta al Miembro de la Población Correccional,* indicándole que "próximamente" estaría evaluado su solicitud. En descuerdo con la respuesta, el Recurrente instó una *Solicitud de Reconsideración.* Mediante la *Respuesta de Reconsideración al Miembro de la Población Correccional,*[5] emitida el 9 de noviembre de 2023, el DCR

---

[5] *Íd,* págs. 9-10.

le informó al Recurrente que su solicitud de traslado sería referida al Comité de Clasificación y Tratamiento ("CTT") del DCR, estableciendo lo siguiente:

> [...].
>
> Se le orienta Sr. Santiago, que la custodia protectiva, es establecer y operar un programa [d]e custodia especializada para los confinados que necesiten ser protegidos de otros confinados. Cabe señalar que si el confinado, **en el caso de usted**, como voluntariamente aceptó custodia protectiva, se solicita por escrito y señala que continua la necesidad de la custodia, es visto en Comité de Clasificación y Tratamiento **realizará la revisión del caso**, asignarán permanentemente la solicitud y se solicita traslado, es un protocolo que se realiza en el área socio penal. (Énfasis suplido).

Como puede observarse, la solicitud de traslado del Recurrente aún no ha sido evaluada y adjudicada de manera final por el DCR. Según surge de la *Respuesta de Reconsideración al Miembro de la Población Correccional,* el DCR procedería a referir su solicitud al CTT, a los fines de que reevaluar su caso y adjudicar **de manera final** si procede o no el traslado. En vista de ello, el recurso de epígrafe instado por la parte Recurrente es uno prematuro.

En el caso de autos, el término para acudir ante este foro no ha comenzado a cursar, puesto que la agencia aun no emite un dictamen final sobre la solicitud de traslado del Recurrente. Según dispone la Sección 4.2 de la LPAU, *supra,* "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, **dentro de un término de treinta (30) días <u>contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia</u>**. (Énfasis y subrayado nuestro).

En vista de ello, el presente recurso es uno prematuro y procede la desestimación del mismo. A tenor con lo anterior, carecemos de jurisdicción para atender el recurso de epígrafe.

**IV.**

Por los fundamentos expuestos, **desestimamos** el recurso de epígrafe por falta de jurisdicción por prematuro.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones